IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEIDI BETZ, | No. C 03-03231 SI |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| TRAINER WORTHAM & COMPANY, INC., et al., | |
| Defendants. | |

Currently before the Court is defendants' motion for partial summary judgment on plaintiff's Securities Act, Section 10(b) claim and her claim of unfair business practices under California Business & Professions Code Section 17200. This case comes back to this Court on remand from the Ninth Circuit following the United States' Supreme Court's decision in *Merck & Co. v. Reynolds*, 130 S. Ct. 1784 (2010). For the following reasons, the Court GRANTS defendants' motion in part and DENIES it in part.

**BACKGROUND**

This case concerns defendants' alleged mismanagement of plaintiff's $2.2 million investment portfolio. Plaintiff Heidi Betz entered into a Portfolio Management Agreement with defendant Trainer Wortham & Company on June 7, 1999. Second Am. Compl. ¶ 10. Trainer Wortham is an investment management company directed and managed by defendant First Republic Bank. *Id.* at ¶ 2. Trainer Wortham employed defendants David P. Como and Robert Vile. *Id.* at ¶ 3-4.[1]

---

[1] The factual contentions underlying the parties' positions were extensively discussed in this Court's April 5, 2005 Order (Docket No. 72), and will not be repeated here.

Plaintiff brings a federal claim under Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b-5, and state law claims for breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, and unfair business practices in violation of California Business and Professions Code § 17200. She seeks at least $2 million in damages and $5 million in punitive damages.

On April 5, 2005, this Court entered an order denying plaintiff's motion for summary judgment and granting defendants' motion, finding that plaintiff's Section 10(b) claim was barred by the extended two year statute of limitations, adopted in the Sarbanes-Oxley Act and effective July 31, 2002. *See* Docket No. 72. On appeal, the Ninth Circuit reversed, finding that there were genuine issues of material fact as to when plaintiff discovered or should have discovered her Section 10(b) claim.[2] Addressing actual notice, the Circuit opinion reviewed the record and held that "a reasonable factfinder could conclude that Betz did not discover that the defendants intentionally misled her into believing that she could withdraw $ 15,000 per month without depleting her principal until June 2002, when Moore told her that Trainer Wortham was 'not going to do anything' to fix her account." *Betz v. Trainer Wortham & Co.*, 519 F.3d 863, 868 (9th Cir. 2008), writ of certiorari granted, vacated by, remanded by *Trainer Wortham & Co. v. Betz*, 2010 U.S. LEXIS 3749 (May 3, 2010). Addressing inquiry notice, the Circuit opinion adopted a "two-part notice-plus-reasonable-diligence test," *id.* at 871, and concluded that under that test "a rational jury could conclude that a reasonable investor in Betz's shoes would not have initiated further inquiry before July 11, 2001." *Id.*, at 872.

The United States Supreme Court granted certiorari, vacated and remanded the Ninth Circuit opinion in light of *Merck & Co. v. Reynolds*, 130 S. Ct. 1784 (2010). In *Merck*, the Supreme Court addressed when the statute of limitations is triggered and held that "the limitations period in

---

[2] The Ninth Circuit also revived plaintiff's state law causes of action, finding that plaintiff's claims for breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, and unfair business practices in violation of California Business and Professions Code § 17200 were not time barred. *Betz v. Trainer Wortham & Co.*, 236 Fed. Appx. 253 (9th Cir. 2007). The Circuit, however, left it to this Court to determine whether "defendants are entitled to summary judgment on the ground that California Business and Professions Code Section 17200 does not apply to 'securities transactions.'" *Id*. at 256.

§ 1658(b)(1) begins to run once the plaintiff did discover or a reasonably diligent plaintiff would have 'discover[ed] the facts constituting the violation'– whichever comes first. In determining the time at which 'discovery' of those 'facts' occurred, terms such as 'inquiry notice' and 'storm warnings' may be useful to the extent that they identify a time when the facts would have prompted a reasonably diligent plaintiff to begin investigating. But the limitations period does not begin to run until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered 'the facts constituting the violation,' including scienter – irrespective of whether the actual plaintiff undertook a reasonably diligent investigation." *Merck & Co. v. Reynolds*, 130 S. Ct. at 1798.

Upon remand, the Ninth Circuit recognized that there were similarities between that Court's prior decision and the Supreme Court's *Merck* decision in terms of the legal standards applied, but nonetheless remanded the case to this Court for further proceedings in light of *Merck* and to allow defendants to file further dispositive motions.

Defendants move for partial summary judgment on the Section 10(b) claim, raising a new statute of limitations argument, and argue that plaintiff's Section 17200 claim is barred because it cannot be predicated on securities transactions.

**LEGAL STANDARD**

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,

3

1 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be
2 evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty*
3 *Lobby, Inc.*, 477 U.S. 242, 252 (1986).

4 In deciding a summary judgment motion, the court must view the evidence in the light most
5 favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255.
6 "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from
7 the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.*
8 However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise
9 genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d
10 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(e)
11 (current-Rule 56(c)(2)).

## DISCUSSION

### I. Plaintiff's Section 10(b) caim

#### A. Plaintiff's Section 10(b) claim is barred in part by the three year statute of repose

16 Defendants' primary argument is that plaintiff's Section 10(b) claim is barred by the statute of
17 limitations that was in effect at the time the claim accrued. Prior to the enactment of the Sarbanes-Oxley
18 Act, private securities fraud actions needed to be filed on the earlier of one year from discovery of the
19 wrongdoing or three years from the improper acts. *See Lampf, Pleva, Lipkind, Prupis & Petigrow v.*
20 *Gilbertson*, 501 U.S. 350, 361 (1991). In *Lampf*, the Supreme Court clarified that the three year time
21 frame acted as a statute of repose, which runs from the date the alleged misrepresentations were made
22 and which is not subject to equitable tolling. *Id.* at 362-63; *see also Merck & Co. v. Reynolds*, 130 S.
23 Ct. at 1797 (noting that the statute of repose protects defendants against stale claims or liability "for acts
24 taken long ago").

25 The Sarbanes-Oxley Act extended the statute of limitations for actions filed on or after July 31,
26 2002 to be the earlier of two years from discovery or five years from the date of the violations. *See* 28
27 U.S.C. §1658(b). However, the extension of the statute of limitations by Sarbanes-Oxley did not revive
28 claims that were already time barred. *See, e.g.*, *Foss v. Bear, Stearns & Co.*, 394 F.3d 540, 542 (7th Cir.

4

2005); *In re ADC Telcoms., Inc. Sec. Litig.,* 409 F.3d 974 (8th Cir. 2005); *Aetna Life Ins. Co. v. Enter. Mortg. Acceptance Co., LLC (In re Enter. Mortg. Acceptance Co., LLC Sec. Litig*.), 391 F.3d 401 (2d Cir. 2004).

In their motion for partial summary judgment – and for the first time in the eight year history of this case – defendants argue that plaintiff's federal claim is barred by the original three year statute of repose. Defendants point out that plaintiff's Section 10(b) claim rests on the alleged oral misrepresentations regarding her ability to withdraw $15,000 a month that were made in June 1999.[3] Defendants also point out that investments which Betz alleges were inappropriate, were first made on June 10, 1999. As a result, defendants argue that the three-year statute of repose bars her Section 10(b) claim, which was not filed until July 2003.

Plaintiff attempts to avoid this bar by arguing that defendants engaged in "continuing violations," by repeating their misrepresentations regarding her investments well past June 1999, and that the three-year statute of repose should be deemed to run from the last such misrepresentation on the same subject matter. *See* Sur-Reply [Docket No. 109-1] at 2 (relying on First and Second Circuit district court cases). Plaintiff recognizes, however, that judges in this District have held that the statute of repose begins to run on the date of the first misrepresentation. *See, e.g., In re Silicon Storage Tech. Inc.*, 2009 U.S. Dist. LEXIS 58705, *12 (Fogel, J.) (N.D. Cal. July 7, 2009); *In re Brocade Communs. Sys. Derivative Litig.*, 615 F. Supp. 2d 1018, 1035 (Breyer, J.) (N.D. Cal. 2009)*; In re Juniper Networks, Inc. Secs. Litig.*, 542 F. Supp. 2d 1037, 1051 (Ware, J.) (N.D. Cal. 2008); *In re Maxim Integrated Prods.*, 574 F. Supp. 2d 1046, 1071 (Ware, J.) (N.D. Cal. 2008); *Clayton v. Landsing Pac. Fund, Inc*., 2002 U.S. Dist. LEXIS 9446, *8-9 (Alsup, J.) (N.D. Cal. May 9, 2002). These Courts have likewise held that each false representation may constitute a separate violation of Section 10(b), but a plaintiff "may not recover for reliance on representations made prior to the [] statute of limitations period under a theory of continuing wrong." *In re Juniper Networks, Inc. Secs. Litig*., 542 F. Supp. 2d at 1051; *see also Clayton*, 2002 U.S. Dist. Lexis 9446 at *9. The Court finds no reason to depart from the decisions of the judges of this District.

---

[3] As defendants' new argument was only cursorily addressed in the opening brief, the Court granted plaintiff's motion for leave to file a Sur-Reply addressing this argument. Docket No. 111.

In her Sur-Reply, plaintiff argued that if this Court agrees with the decisions of other judges in this District and finds her June 1999 claims barred by the statute of repose, that "she should nonetheless have a 10(b) claim for unsuitable investments and misrepresentations made after" the statute of repose date and within the statute of limitations. Sur-Reply at 2:10-11. In light of plaintiff's position, the Court provided her a final opportunity to support her 10(b) claim and submit a supplemental brief identifying with specificity each of defendants' acts and the date of those acts that she claims are not barred by the three year statute of repose and support a Section 10(b) claim. *See* Docket No. 111.

In her supplemental brief, plaintiff identifies two sets of misrepresentations she claims were made post July 1999 to support her Section 10(b) claim. The first set of representations, generally, are "lies" or failures to disclose about the status of plaintiff's portfolio, about the nature and quality of her investments, and about the unsuitability of her investments. *See* Supplemental Brief at 3. However, plaintiff fails to explain how any of these specific representations were made "in connection with the sale or purchase of a security" within the limitations period. Instead, each of the representations identified by Betz – viewed in the light most favorable to Betz – was an attempt to mollify plaintiff's concerns about her original investments made in June 1999. Plaintiff provides no authority for the proposition that representations made to persuade an investor to refrain from selling (*e.g.*, to prevent Betz from moving her investments to another firm or to prevent Betz from taking other action) can support a Section 10(b) claim.

The second set of representations Betz identifies are ones made by defendants Como and Vile in connection with Betz's "trading on margin." Specifically, in her SAC plaintiff alleges that in November and December 1999 – within the repose period – Como made unsuitable recommendations that Betz trade on margin. SAC ¶¶ 19-20. Plaintiff argues that Como and Vile fraudulently failed to disclose the risk of trading on margin. Supplemental Brief at 4.

For purposes of this motion, the Court finds that plaintiff has raised a genuine issue of material fact to support her Section 10(b) claim based on alleged misrepresentations and/or omissions of fact in connection with defendants' advice that plaintiff trade on margin in order to withdraw funds from her account. *See* SAC ¶¶ 19-20; Supplemental Brief at 3; *see also* Betz Depo. Trans at 113-116.

Plaintiff also argues that she can base her Section 10(b) claim on the "unsuitability" of investment

6

trades made by defendants after July 31, 1999. Plaintiff argues that even after the initial investment strategy was implemented in June 1999, and the original investments made, additional trades took place on her account. *See* Supplemental Brief at 5; *see also* Chan Decl., Exs. I, J, K and M (showing additional purchases made within plaintiff's account after July 31, 2009). For purposes of ruling on this motion, the Court finds that plaintiff has raised a genuine issue of material fact with regard to trades that occurred after July 31, 1999 and which were connected to a specific misrepresentations that likewise fell within the repose period.

For the foregoing reasons, the Court concludes that the June 1999 misrepresentations – *i.e.*, that in June 1999 defendants promised plaintiff that she would be able to withdraw $15,000 a month from her investment account without depleting her principal – are time barred, because suit on those misrepresentations must have been filed by June 2002. However, the Court concludes that plaintiff's Section10(b) claim based on the misrepresentations or omissions made in connection with plaintiff's trading on margin, as well as trades in plaintiff's account made after July 31, 1999 in connection with specific representations within the repose period, survive.

### B. Plaintiff's Section 10(b) claim is not barred by the one or two year statute of limitations

Defendants also argue that plaintiff's Section 10(b) claim is barred by the pre-Sarbanes-Oxley one year statute of limitations as well as the expanded Sarbanes-Oxley two year statute of limitations. Defendants argue that irrespective of the similarities between the Ninth Circuit's finding that Betz was not on inquiry notice and the inquiry notice test adopted by the Supreme Court in *Merck & Co. v. Reynolds*, 130 S. Ct. 1784, plaintiff had *actual* knowledge of the alleged fraud within the statute of limitations. However, as plaintiff points out, in *Merck*, the Supreme Court affirmed that actual knowledge exists only when a plaintiff has knowledge of the facts constituting the fraud, including facts constituting defendants' scienter. *See Merck*, 130 S. Ct. at 1707; *see also* Opposition at 9-10. Plaintiff argues, and this Court agrees, that there is a genuine issue of material fact as to when Betz discovered facts regarding defendants' scienter, especially where, viewing the facts favorably to Betz, defendants made continued representations to Betz that her account would recover and/or that they would "take

care" of the situation. *See, e.g.*, Betz Decl., ¶ 4. Moreover, the Ninth Circuit did address actual notice and held, on the record in this case,[4] that Betz did not have actual notice of the facts constituting scienter. *See Betz*, 519 F.3d at 867; *see also id.* at 868 ("We cannot say that, as a matter of law, Betz, before July 11, 2001, actually discovered facts suggesting that the defendants consciously or deliberately and recklessly deceived her."). The Court sees no reason to revisit that conclusion and finds that there are disputed issues of material fact as to whether plaintiff knew, or should have known if a reasonably diligent plaintiff, the facts constituting her remaining Section 10(b) claim, including facts constituting scienter.

## II. Plaintiff's Section 17200 unfair competition law claim cannot be based on securities transactions

Defendants also move for summary judgement on plaintiff's California Business & Professions Code Section 17200 unfair competition law (UCL) claim, arguing that a 17200 claim cannot be based on securities transactions. Defendants rely on *Bowen v. Ziasun Technologies, Inc.*, 116 Cal. App. 4th 777 (Cal. App. 4th Dist. 2004). In *Bowen*, the California Court of Appeal compared the scope of California's UCL to the scope of the Federal Trade Commission Act and held that since the FTC Act did not apply to securities transactions, the UCL shouldn't either. *Id.*, at 790. Since *Bowen*, courts have narrowed *Bowen's* broad language and have allowed Section 17200 claims to proceed where the claims were tangentially related to securities transactions. *See, e.g.*, *Benson v. JPMorgan Chase Bank, N.A.*, 2010 U.S. Dist. LEXIS 37465 (N.D. Cal. Apr. 15, 2010) (allowing claim against Bank for aiding and abetting the sale of fraudulent securities, where Bank did not participate in securities transactions); *In re Charles Schwab Corp. Secs. Litig.*, 257 F.R.D. 534, 553 (N.D. Cal. 2009) (preserving Section 17200 claims predicated on federal Investment Company Act where "[p]laintiffs' Section 17200 claims do not concern fraud in the sale of securities and, indeed, are not predicated upon violations of the 1933 or 1934 Acts."); *Strigliabotti v. Franklin Res., Inc.*, 2005 U.S. Dist. LEXIS 9625 (N.D. Cal. Mar. 7, 2005) (denying motion to dismiss Section 17200 claim challenging a scheme to overcharge investors in the management of securities because "even the broad language of the *Bowen* case is limited to 'securities

---

[4] Discovery was not reopened after remand.

transactions,' and does not encompass all situations where securities are somehow implicated but not purchased or sold.").

No court, however, has allowed Section 17200 claims to proceed where, as here, the predicate acts are securities transactions. As Judge Seeborg recently noted in dismissing a 17200 claim based directly on the sale and purchase of securities, "[i]t appears that federal cases refusing to apply *Bowen* to the UCL all involved claims that did not target a securities transaction. These courts refused to rely on *Bowen* to foreclose any UCL claim, merely because the case involved securities in a general sense. This is a well-reasoned application of *Bowen*, and were the facts in this case similar, this Court would follow suit. Here, however, plaintiffs' theory unavoidably focuses on the purchase of securities, and *Bowen* is determinative." *See San Francisco Residence Club, Inc. v. Amado*, 2011 U.S. Dist. LEXIS 19230, *30 (Seeborg, J.) (N.D. Cal. Feb. 25, 2011); *see also Scala v. Citicorp Inc.*, 2011 U.S. Dist. LEXIS 30871, *20 n.7 (Breyer, J.) (N.D. Cal. Mar. 15, 2011) (finding that claims regarding "misrepresentations and omissions that occurred 'in connection with' the purchase or sale of covered securities" cannot be stated under § 17200 under *Bowen*); *Charles O. Bradley Trust v. Zenith Capital LLC*, 2008 U.S. Dist. LEXIS 60876, *12 (White, J.) (N.D. Cal. Aug. 11, 2008) ("Court finds that the claim for violation of California's unfair competition law is barred by the holding in *Bowen*."); *Scognamillo v. Credit Suisse First Boston LLC*, 2005 U.S. Dist. LEXIS 20221, *36-37 (Henderson, J.) (N.D. Cal. Aug. 25, 2005) (dismissing 17200 claims based on securities transactions); *see also Holland v. TD Ameritrade, Inc.*, 2011 U.S. Dist. LEXIS 395, *17-18 (E.D. Cal. Jan. 3, 2011) ("the UCL does not apply to securities transactions").

The Court, therefore, finds that plaintiff's Section 17200 claim cannot be based on her allegations regarding the sale and purchase of securities.

///

9

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS in part and DENIES in part defendants' motion for partial summary judgment. Judgement is entered in defendants' favor on plaintiff's Section 10(b) claim based on any representations or investments made prior to July 31, 1999, as well as her Section 17200 claim predicated on securities transactions.

**IT IS SO ORDERED.**

Dated: May 23, 2011

SUSAN ILLSTON
United States District Judge